**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **2:11-cr-101** |
| **v.** | ) | |
| | ) | |
| **JOHN A. BROWNLEE, III,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM ORDER</u>

Pending before the Court is the GOVERNMENT'S APPEAL FROM ORDER OF

RELEASE (Document No. 22). Defendant has filed a response in opposition (Document No. 27)

and the appeal is ripe for disposition. Given the liberty interest at issue, the Court has expedited

its consideration of this matter.


<u>Factual and Procedural Background</u>

On February 4, 2011, Brownlee was indicted by a federal grand jury on one count of

Distribution of Material Depicting the Sexual Exploitation of a Minor, in violation of 18 U.S.C.

§ 2252(a)(2), which carries a statutory mandatory minimum sentence of five years imprisonment.

The government has represented that it intends to bring additional charges against Brownlee "in

short order."

Brownlee was arrested on May 12, 2011 and had an initial appearance before Magistrate

Judge Ervin S. Swearingen, after which he was temporarily detained pursuant to the request of

the government. On May 17, 2011, the Magistrate Judge conducted a detention hearing. This

Court has reviewed a transcript of that proceeding. At the detention hearing, Brownlee did not

testify, nor did his attorney present any witnesses or evidence on his behalf. The government presented testimony from FBI Special Agent Tanya Evanina and Pretrial Services officer Eric Bossart.

Special Agent Evanina testified about the six-month undercover investigation of Brownlee, including his numerous conversations with confidential informants. The government played recordings of some of these conversations during the hearing. Brownlee was first reported to government agents by a person he contacted through a bondage and discipline/sadism-masochism website. During a telephone conversation with that person, Brownlee overheard small children playing in the background and asked whether the informant was willing to provide the children to him for a sexual encounter. The informant declined and thereafter contacted the police. She also agreed to cooperate with law enforcement in an investigation. Over the ensuing months, Brownlee expressed to informants, *inter alia,* his desire to engage in sexual activity with very young children; that he had engaged in numerous sexual encounters with his own daughter (now an adult) beginning when she was three years old; that he was actively searching for mothers and/or nannies who would allow him to have sexual "access" to young children in their care; that he was arranging for his daughter to have a sexual encounter with two young boys in Washington, D.C.; and that he had previously arranged with a bus driver from New Jersey to drop off the driver's daughter in Pittsburgh for sexual encounters. In addition, Brownlee sent numerous photographs to the informant which depicted prepubescent children engaging in sexual activity.

Special Agent Evanina also testified regarding Brownlee's extensive efforts to arrange a sexual encounter with a (purported) seven-year-old daughter of another confidential informant. On April 30, 2011, Brownlee met with the purported mother (and another confidential source) at an Eat 'n Park restaurant to plan an illicit sexual liaison at a local hotel. At the meeting, Brownlee

gave both confidential sources $100. Brownlee specified that the seven-year-old girl was to wear a Catholic schoolgirl outfit, discussed the sex acts he would perform, and agreed to reserve and pay for the hotel room. Brownlee also agreed to bring the girl a Barbie doll as a gift and to pay an additional $200 to the mother.

On March 11, 2011, Brownlee reserved a room for the next day at the Knight's Inn in Bridgeville, Pennsylvania. Brownlee then called the confidential source with directions to the hotel. Shortly after noon on May 12, 2011, Brownlee drove to the Knight's Inn, went to the front desk, and paid cash for the room. He then returned to his car, drove to the back of the hotel and parked in front of the rented room, where he was taken into custody. In Brownlee's car, the agents recovered a Barbie doll wrapped in pink paper, a brand new camera, "penis straws," lubricant, maxi pads, Viagra pills and $200 in cash.

The evidence presented at the detention hearing established that Brownlee is married, but separated, and lives alone. Brownlee's daughter lives nearby him. Brownlee pays the bills at premises located at 55 Port Perry Road, North Versailles, Pennsylvania, but he typically slept there only one or two nights per week. Brownlee worked at three different jobs, including a real estate company and a mental health/mental retardation facility and he usually slept at one of those work locations. Brownlee represented that he would install a telephone land line at the Port Perry Road residence, to enable electronic monitoring.

Apparently, Pretrial Services prepared a report which suggested that Brownlee need not be detained pending trial. This report has not been made part of the record. Pretrial Services officer Bossert testified that the report had been prepared based solely on the initial indictment for distribution of child pornography based on an interview with Brownlee. Pretrial Services was not aware of Brownlee's efforts to engage in a sexual encounter with a minor child at the Knight's

Inn.

At the conclusion of the hearing, the Magistrate Judge placed Brownlee on "home incarceration," with the instruction that he was not to leave his residence unless granted permission by Pretrial Services.  Upon the government's request, the Magistrate Judge stayed his decision pending this appeal.

Legal Analysis

The government strenuously objects to Brownlee's release.  The government asserts that the charges in the indictment generate a "presumption" in favor of pretrial detention and argues that the facts would justify Brownlee's detention even in the absence of such a presumption.

The legal standards governing review of a magistrate judge's decision regarding pretrial detention were recently summarized as follows:

> This court exercises de novo review over the detention order entered by the magistrate judge. *See United States v. Delker*, 757 F.2d 1390, 1393-95 (3d Cir.1985). The magistrate judge's decision and reasoning is to be given careful consideration where a transcript of the detention hearing is available, *id.*, even though the standard of review removes any obligation to accord deference to the magistrate judge's findings and decision. *See United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir.1990). This court may make its independent determination based solely upon the evidence introduced at the prior hearing. *Delker*, 757 F.2d at 1395; *Koenig*, 912 F.2d at 1193 ("Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."); *United States v. Torres*, 929 F.2d 291, 292 (7th Cir.1991) (district court may base its findings on transcript of the hearings before the magistrate judge). Of course, it may also consider any additional evidence or proffers submitted in conjunction with any supplemental proceedings.

*United States v. Farris*, 2008 WL 1944131, *7 (W.D. Pa. 2008).

De novo review does not require an additional evidentiary hearing. *United States v. Price*, 2008 WL 282347 *2 (W.D. Pa. 2008), *citing United States v. Chagra*, 850 F.Supp. 354, 357

(W.D.Pa.1994) (court may incorporate the records of the proceedings and the exhibits before the magistrate judge). As noted above, the Court has reviewed the transcript of the proceeding conducted by the Magistrate Judge (Document No. 23) and concludes that an additional hearing is not necessary under the circumstances.

> The principles governing the "presumption" of detention are as follows:
>
> Where the record reflects probable cause to believe the defendant has committed a crime of violence or an offense for which a maximum term of imprisonment of ten years or more is prescribed by the Controlled Substances Act, 21 U.S.C. § 801 et seq., the Bail Reform Act creates a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person in the community. 18 U.S.C. § 3142(e); *United States v. Perry*, 788 F.2d 100, 106 (3d Cir.1986). A defendant may rebut the presumption by presenting "some credible evidence" that he will not pose a threat to the community upon his release. *United States v. Carbone*, 793 F.2d 559, 560 (3d Cir.1986) (to rebut the presumption "[t]he defendant must produce some credible evidence forming a basis for his contention that he will appear and will not pose a threat to the community"), *citing United States v. Jessup*, 757 F.2d 378 (1st Cir.1985); *United States v. Giampa*, 755 F.Supp. 665, 668 (W.D. Pa.1990).

*U.S. v. Turner*, 2008 WL 4186212 *1 (W.D. Pa. 2008).

In this case, Defendant concedes and acknowledges that the rebuttable presumption of detention is triggered by the charge that he distributed child pornography. *See* 18 U.S.C. § 3142(e)(3)(E) (specifically enumerating offenses under 18 U.S.C. § 2252(a)(2) as triggering the presumption). Therefore, Brownlee must present credible evidence: (1) that he poses no threat to the community; and (2) that he will appear at trial.

At the detention hearing, Brownlee's attorney, Leonard Sweeney, argued that appropriate conditions of pretrial release could be fashioned. Defense counsel argued that Brownlee is 62 years old, has been gainfully employed, has no criminal history (except for two garbage violations), and has not been the subject of any accusations during his 23 years of supervision of mentally handicapped people. However, Brownlee has not presented any "evidence" other than

the arguments of counsel.  There is no indication that the Magistrate Judge considered, or applied, the presumption of detention.

Upon de novo review, this Court concludes that Brownlee has failed to overcome the presumption that he poses a danger to other persons and the community.  Indeed, on this record, the Court concludes that Brownlee poses a clear danger if he is released to home incarceration. There is no other person living in Brownlee's residence.  Brownlee is not merely accused of looking at electronic images of child pornography.  Rather, the government presented substantial evidence that Brownlee has been engaged in multiple efforts to arrange actual sexual encounters with real prepubescent children.  Moreover, there is evidence of a possible ongoing sexual relationship with his daughter, who lives nearby.  Home incarceration would not prevent Brownlee from pursuing such inappropriate sexual encounters within his residence.

There is no basis to conclude that the imposition of any set of conditions of release by this Court would be effective to prevent Brownlee from posing a danger to the safety of other persons and/or the community.

In accordance with the foregoing, the GOVERNMENT'S APPEAL FROM ORDER OF RELEASE (Document No. 22) is **GRANTED/SUSTAINED**.  Defendant shall be detained without bond pending trial.


SO ORDERED this 26th day of May, 2011.


BY THE COURT:


s/  Terrence F. McVerry
United States District Court Judge

cc:     Jessica Lieber Smolar, AUSA
        Email:jessica.smolar@usdoj.gov

        Leonard E. Sweeney, Esquire
        Email: thelawfirmpghpa@comcast.net

        Dennis Lydon
        United States Marshals

        United States Pretrial Services