IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    )
                            )
            v.              )    Criminal No. 11-00101
                            )    Judge Terrence F. McVerry
JOHN A. BROWNLEE, III       )

## GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT JOHN A. BROWNLEE'S PRETRIAL MOTIONS

AND NOW comes the United States of America, by its attorneys, David J. Hickton, United States Attorney for the Western District of Pennsylvania, and Jessica Lieber Smolar, Assistant United States Attorney for said district, and files the following omnibus response to defendant John A. Brownlee's pretrial motions:

## I.   Introduction and Procedural Overview

On May 3, 2011, a one count Indictment was returned by a federal Grand Jury charging defendant John A. Brownlee ("Brownlee") with Distribution of Material Depicting the Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2252(a)(2).  On June 9, 2011, the Grand Jury returned a 3 count Superceding Indictment charging defendant Brownlee with Distribution of Material Depicting the Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2252(a)(2) (Count 1); Attempted Coercion and Enticement of a Minor to Engage in Illegal Sexual Activity in violation of 18 U.S.C. § 2422(b)(Count 2), and Attempted Production of Material Depicting

the Sexual Exploitation of a Minor in violation of 18 U.S.C. § 2251(a) and (e) (Count 3).

This case stems from a six-month long undercover operation, which took place from approximately November, 2010 through May 12, 2011, during which time Brownlee expressly detailed his sexual desire for very young children and took multiple affirmative steps to arrange to photograph and engage in sexual activity with a seven (7) year old child.

Defendant Brownlee has filed the following pretrial motions: Motion to Produce Evidence (Dkt. 41); Motion For Disclosure of Promises of Leniency and/or Existence of Plea Bargain Agreements with Confidential Sources (Dkt. No. 42); Motion for Psychological/Psychiatric Evaluation Pursuant to 18 U.S.C. § 4241 et seq. (Dkt. No. 43); and Request For Specific Kyles and Brady Information (Dkt. No. 44).

This pleading sets forth the government's omnibus response to the aforementioned pretrial motions filed by defendant.

## II.  **Response to Defendant's Motions**

### A. **Discovery Motions (Dkt. Nos. 41,42,44)**

The law is well-settled that "[c]riminal pretrial discovery is, of course, vastly different from discovery in civil cases." United States v. Ramos, 27 F.3d 65, 67-68 (3d Cir. 1994). "In contrast to the wide-ranging discovery permitted in civil cases, Rule 16 of the Federal Rules of Criminal Procedure

delineates the categories of information to which a defendant is entitled in pretrial discovery in criminal cases, with some additional material being discoverable in accordance with statutory pronouncements and the due process clause of the Constitution." Id.  Accord United States v. Casseus, 282 F.3d 253, 257 (3d Cir. 2002) (affirming district court's denial of defense request for disclosure and interview of eyewitness/anticipated government trial witness; "[I]t is clear that a criminal defendant does not have the right to full discovery of the government's case.").[1]

The United States accepts its obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), Rules 12 and 16 of the Federal Rules of Criminal Procedure, and the Jencks Act, 18 U.S.C. § 3500.  Further, the United States is willing to cooperate with any reasonable request by defendant.

The government notes, however, that its obligation to make available pretrial discovery materials is governed primarily by Rule 16 of the Federal Rules of Criminal Procedure.  That rule requires the government to produce certain categories of information upon request of the defendant:  1) the defendant's

---

[1]  As the Supreme Court explained in United States v. Ruiz, 536 U.S. 622, 629 (2002), the Constitution does not require the government to share "all useful information" with the defendant during discovery.  In particular, the government is not required to disclose impeachment material relating to informants or other witnesses, as premature disclosure could "disrupt ongoing investigations," expose prospective witnesses to "serious harm," and would place a substantial "burden" on the government prior to trial preparation.  Id. at 631-32.

statements that are in written or recorded form (including grand jury testimony) and any oral statement given by the defendant to a person then known by the defendant to be a government agent (Rule 16(a)(1)(A) & (B)); 2) the defendant's prior criminal record (Rule 16(a)(1)(D)); 3) all documents and tangible objects within the possession, custody or control of the government which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant (Rule 16(a)(1)(E)); 4) results or reports of physical or mental examinations or other types of scientific tests in the government's possession which are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial (Rule 16(a)(1)(F)); and 5) a written summary of expert testimony the government intends to use during its case in chief at trial (Rule 16(a)(1)(G)).

Under Brady v. Maryland, supra, and its progeny, the government also has the obligation to disclose exculpatory evidence -- evidence that is favorable and material to the defense. Strictly speaking, Brady "'is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation.'" United States v. Starusko, 729 F.2d 256, 262 (3d Cir. 1984) (citation omitted).

> Exculpatory evidence includes material that goes to the heart of the defendant's guilt or innocence as well as that which might well alter the jury's judgment of the credibility

> of a crucial prosecution witness.   Evidence
> impeaching the testimony of a government
> witness is exculpatory when the credibility of
> the witness may be determinative of a criminal
> defendant's guilt or innocence.   If the
> exculpatory evidence "creates a reasonable
> doubt" as to the defendant's culpability, it
> will be held to be material.

Id. at 260 (citations omitted).  See also United States v. Bagley,

473 U.S. 667, 682 (1985) (Evidence is "material" when it is

reasonably probable that, "had the evidence been disclosed to the

defense, the result of the proceeding would have been different.").

Brady material must be disclosed "in time for its effective use at

trial."  United States v. Higgs, 713 F.2d 39, 44 (3d Cir. 1983).

Accord United States v. Presser, 844 F.2d 1275, 1283 (6th Cir.

1988).

The United States is unaware of any Brady material

pertaining to defendant Brownlee.

The Jencks Act, 18 U.S.C. § 3500, requires the government

to provide the defense with statements of witnesses that the

government intends to call at trial.   The Jencks Act protects

discovery of such witnesses' statements, however, "until said

witness has testified on direct examination in the trial of the

case." 18 U.S.C. § 3500(a).  See also United States v. Ramos, 27

F.3d at 68; United States v. Campagnuolo, 592 F.2d 852, 858 (5th

Cir. 1979); United States v. Horsley, 621 F. Supp. 1060, 1067-68

(W.D. Pa. 1985), aff'd, 831 F.2d 286, 288 (3d Cir. 1987); United

States v. Fischbach & Moore, Inc., 576 F. Supp. 1384, 1393 (W.D.

Pa. 1983).   The Court of Appeals for the Third Circuit has held that a defendant's right to a fair trial is "fully protected" if Brady material relating to the credibility of government witnesses is disclosed "the day that the witness testifies." Higgs, 713 F.2d at 44.

The United States acknowledges, however, that a strict adherence to the dictates of the Jencks Act could cause delays at trial.   Therefore, the government will voluntarily turn over Jencks Act materials one week prior to trial to ensure that unnecessary interruptions or delays are avoided.

Outside of the aforementioned statutes, rules, and case law, a defendant has no general constitutional right to pretrial discovery.   Weatherford v. Bursey, 429 U.S. 545, 559 (1977).   Those rights conferred by statute, rule, and case law cannot be used to compel the United States to disclose the minutia of its evidence, its trial strategy, or its investigation.   United States v. Fioravanti, 412 F.2d 407, 411 (3d Cir. 1969).[2]   Thus, Brady, Rule 16, and the Jencks Act should be construed as limits on discovery, within which limits the trial court may exercise its discretion.

---

[2]   Accord Fed. R. Crim. P. 16(a)(2) **Information Not Subject to Disclosure** ("Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case.   Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.").

See United States v. Randolph, 456 F.2d 132, 136 (3d Cir.), cert. denied, 408 U.S. 926 (1972); Fischbach & Moore, Inc., 576 F. Supp. at 1393 (Brady is not a discovery device); United States v. Deerfield Specialty Papers, 501 F. Supp. 796, 819 (E.D. Pa. 1980) (pretrial discovery rules are not meant to permit "fishing expeditions" into government case files); cf. United States v. Adams, 759 F.2d 1099, 1111 (3d Cir.) (discovery is within the discretion of the district court), cert. denied, 474 U.S. 906, 971 (1985); United States v. Liebert, 519 F.2d 542, 548 (3d Cir.) (defendant's discovery demands must be reasonable), cert. denied, 423 U.S. 985 (1975).

In this case, defendant's pretrial motions focus mainly on information about the government's anticipated trial witnesses and impeachment information pertaining to those witnesses.  The government intends to provide the majority of that information -- to the extent that it exists -- at the time that the government discloses the Jencks Act materials (i.e., one week prior to trial). To the extent that defendant seeks an earlier disclosure of this "impeachment" information, the government objects.

The Jencks Act, 18 U.S.C. § 3500, was enacted to set limits on pretrial discovery of witness statements in criminal cases, and, hence, reflects a legislative determination that a criminal defendant is entitled to use such statements for impeachment purposes in cross-examination, rather than in pretrial preparation.  See Palermo v. United States, 360 U.S. 343, 359

(1959); United States v. Murphy, 569 F.2d 771, 773 (3d Cir. 1978).

Under the Act itself, the government must produce statements of the

government witnesses at the end of their direct examination:

> In any criminal prosecution brought by the United
> States, no statement or report in the possession of
> the United States which was made by a government
> witness or prospective government witness (other
> than the defendant) shall be the subject of subpena
> [sic] discovery, or inspection until said witness
> has testified on direct examination in the trial of
> the case.

18 U.S.C. § 3500.

The United States Supreme Court and the Court of Appeals

for the Third Circuit both have confirmed that Jencks Act material

need not be produced until after the witness testifies at trial.

Palermo, 360 U.S. at 349; United States v. Starusko, 729 F.2d at

263; Murphy, 569 F.2d at 773; United States v. Kenny, 462 F.2d

1205, 1212 (3d Cir. 1972).   Moreover, the Third Circuit has

repeatedly held that a district court cannot compel the government

to disclose statements of its witnesses before the conclusion of

their direct examination, and that ordering early disclosure of

such information constitutes an abuse of discretion or even

reversible error.   United States v. Higgs, 713 F.2d at 44-45;

Murphy, 569 F.2d at 773; Kenny, 462 F.2d at 1212; United States v.

Scolnick, 392 F.2d 320, 327 (3d Cir. 1968).   See also In re United

States, 834 F.2d 283 (2d Cir. 1987); United States v. Algie, 667

F.2d 569, 571 (6th Cir. 1982); United States v. Litman, 547 F.

Supp. 645, 652 (W.D. Pa. 1982).

Despite the plain language of the statute and judicial authorities, defendants in federal criminal proceedings repeatedly request early disclosure of "impeachment" material pertaining to the government's witnesses, relying on Brady v. Maryland and the pretext that the granting of the motion accords with judicial efficiency and economy and preserves defendants' due process rights.

In reality, defendant seeks to have the United States identify its witnesses and provide a witness list in advance of trial.  It is well established, however, that "the [criminal] discovery rules do not permit the defense to get the names of witnesses." United States v. Mitchell, 540 F.2d 1163, 1166 (3d Cir. 1977).  Accord United States v. Casseus, 282 F.3d at 254, 257 (affirming district court's refusal to order pretrial discovery of the government's witness list; "a criminal defendant does not have the right to full discovery of the government's case"); United States v. Addonizio, 451 F.2d 49, 62 (3d Cir. 1972) ("in no event is the government required to divulge the identity of its witnesses in a noncapital case").  See also United States v. DiPasquale, 740 F.2d 1282, 1294 (3d Cir. 1984), cert. denied, 469 U.S. 1228 (1985); Government of the Virgin Islands v. Ventura, 476 F.2d 780, 781 n.1 (3d Cir. 1973).

It is equally well-settled that disclosure of evidence that may be used to discredit government witnesses is not directly exculpatory as to a defendant's substantive guilt, and need not be

disclosed in advance of trial.  As noted above, the Third Circuit held in <u>United States v. Higgs</u> that disclosure of witness credibility evidence at the time of trial sufficiently ensures a defendant's right to a fair trial:

> No denial of due process occurs if <u>Brady</u> material is disclosed to [the defendant] in time for its effective use at trial....  The <u>Brady</u> material in this case was information that [the defendant] could use on cross-examination to challenge the credibility of government witnesses.  For that type of material, we think [the defendant's] right to a fair trial will be fully protected if disclosure is made the day that the witness testifies. Disclosure at that time will fully allow [the defendant] to effectively use that information to challenge the veracity of the government's witnesses.

713 F.2d at 44.

Significantly, in <u>Higgs</u>, the court specifically rejected the argument "that the requested information might also be used by defense counsel for investigating their case."  <u>Id</u>. at 43 n.5.  The <u>Higgs</u> defendants claimed "that knowledge of who the government's witnesses were and how they fit into the alleged conspiracy might lead to other evidence pertinent to the issue of substantive guilt or innocence."  <u>Id</u>.  In addition, the <u>Higgs</u> defendants asserted "that the information must be provided before trial to allow them sufficient time to prepare their case."  <u>Id</u>.

The Third Circuit disagreed, holding that "the requested information" was <u>not</u> "<u>Brady</u> material for that purpose."

> While that information is material for impeachment purposes, names and addresses of witnesses and what they have been promised by the government for their

10

> cooperation absent other evidence, sheds little if
> any light on the underlying question of substantive
> guilt.  Thus that information would not be material
> under the appropriate [United States v.] Agurs test
> [427 U.S. 97 (1976)], and *would* *not* *need* *to* *be*
> *disclosed* *by* *the* *government* *under* *Brady*

Id. (emphasis added).

Accordingly, pursuant to the foregoing legal authority, the government will provide impeachment material relating to its trial witnesses at the time that it discloses its Jencks Act materials for the witnesses.  The United States further responds to each of defendants' specific pretrial motions as follows:

**1.    Motion To Produce Evidence That The Government Intends to Use Under Federal Rules of Evidence 404(b) and 609 (Dkt. No. 41)**

Defendant Brownlee requests an Order from the Court "requiring the Government to produce all evidence of prior bad acts which it intends to use in its case in chief, or cross examination, or rebuttal and specifically requests production of all evidence gathered in any prior surveillance/investigation of Defendant relating to alleged conduct similar or akin to conduct to which Defendant is presently charged and further requests that the Court conduct a pretrial hearing to determine the admissibility of all such evidence." (Dkt. No. 41)

Rule 404(b) of the Federal Rules of Evidence provides that "upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial ... of the

general nature of any ... evidence [of other crimes, wrongs, or acts] it intends to introduce at trial." Fed. R. Evid. 404(b). "The rule is inclusive, not exclusive, and emphasizes admissibility." United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992) (citations omitted). Accord Government of Virgin Islands v. Harris, 938 F.2d 401, 419-20 (3d Cir. 1991) ("The drafters intended that Fed. R. Evid. 404(b) be construed as a rule of 'inclusion' rather than one of 'exclusion' in admissibility of other-acts evidence." (citations omitted)).

The United States has not yet identified the specific bad acts by defendant that it will seek to introduce at trial. The government is aware of the requirement under Rule 404(b) to provide such notice, however, and will do so at least two weeks prior to trial. Courts which have addressed the issue generally have held that two weeks notice is more than adequate under the Rule. See, e.g., United States v. Perez-Tosta, 36 F.3d 1552, 1560-63 (11th Cir. 1994), cert. denied, 515 U.S. 1145 (1995) (six days notice adequate); United States v. Kern, 12 F.3d 122, 124 (8th Cir. 1993) (notice fourteen days prior to trial is sufficient under FRE 404(b)); United States v. French, 974 F.2d 687, 694-95 (6th Cir. 1992) (government provided one week notice of prior bad acts (drug transaction) in narcotics prosecution arising from traffic stop; "We find no abuse of discretion on the notification aspect of [defendant's] objections. There was ample opportunity before trial to prepare for the consequences of this damaging evidence."), cert.

denied, 506 U.S. 1066 (1993); <u>United States v. Giampa</u>, 904 F. Supp. 235, 283 (D.N.J. 1995) ("There was no support for [defendants'] request for immediate notification of what, if any, FRE 404(b) evidence the Government intended to offer at trial."; motion for immediate notification denied, and government ordered to provide Rule 404(b) notice two weeks prior to trial); <u>United States v. Wei</u>, 862 F. Supp. 1129, 1134 (S.D.N.Y. 1994) (government directed to provide Rule 404(b) notice two weeks prior to trial); <u>United States v. Evangelista</u>, 813 F. Supp. 294, 302 (D.N.J. 1993) (ten business days prior to trial adequate notice); <u>United States v. Williams</u>, 792 F. Supp. 1120, 1133 (S.D. Ind. 1992) (creating general ten-day rule for pretrial notice of Rule 404(b) evidence; "By receiving notice of the general nature of 404(b) evidence ten days before trial, surprise is avoided and the defendant has an adequate opportunity to challenge the admissibility of the information.").[3]

─────────

[3] <u>Accord</u> <u>United States v. Velasquez</u>, 1997 WL 414132, *5 (S.D.N.Y. July 23, 1997) ("The Government has suggested that two weeks prior to the commencement of trial, it will provide [Rule 404(b) notice].  This portion of the motion requires no further discussion because two weeks provides 'reasonable notice.'"); <u>United States v. Rios</u>, 1997 WL 356476, *1 (E.D. Pa. June 20, 1997) (Rule 404(b) notice to be provided one week prior to trial); <u>United States v. Thomas</u>, 1996 WL 210076, *2 (N.D. Ill. April 26, 1996) ("In the present case, the government shall disclose, two weeks prior to trial, any 404(b) evidence that it reasonably believes it is likely to present at trial."); <u>United States v. Lester</u>, 1995 WL 656960, *15 (S.D.N.Y. Nov. 8, 1995) ("The Government shall make every effort to provide the Court and the defense with its proposed similar act evidence no later than a week prior to trial."); <u>United States v. Gutierrez-Flores</u>, 1994 WL 558034, *3 (S.D.N.Y. Oct. 11, 1994) ("The government avers that its present intention is not to introduce ... at trial any similar act evidence within the meaning of Rule 404.  In the

The evidence the government wishes to offer at trial may well change as the proof and possible defenses crystallize.  Thus, the appropriate time for resolution of Rule 404(b) admissibility issues is normally at trial.  See United States v. Saada, 212 F.3d 210, 224 n. 15 (3d Cir. 2000) ("Consistent with the language of Rule 404(b), virtually all such issues are raised pretrial, and the evidentiary subtleties are discussed other than before the jury.  However, often the full context of Rule 404(b) evidence may not be evaluated until all evidence has been presented, following which the jury may be carefully instructed as to the limited way in which the evidence may be considered."); Giampa, 904 F. Supp. at 284 ("Generally, objections as to the admissibility of prior bad acts under FRE 404(b) are properly asserted during trial, not at the pretrial stage." (citing Luce v. United States, 469 U.S. 38, 41 (1984) ("A reviewing Court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context.")); United States v. Eisenberg, 773 F. Supp. 662, 685 (D.N.J. 1991); and United States v. Vastola, 670 F. Supp. 1244, 1268 (D.N.J. 1987) (it would be "unduly speculative" to rule on the admissibility of "other acts" evidence before hearing the factual context at trial)).

---

event the government's present inclination changes, the government is directed to comply with the mandate of Rule 404(b) by providing such notice within ten (10) days before trial or 'during trial if the court excuses pretrial notice on good cause shown.'").

The United States further notes that, to date, it has produced to counsel for defendant, pursuant to Federal Rule of Criminal Procedure 16.1, extensive email, text, and audio recordings involving defendant Brownlee. In the body of those emails, text and audio recordings, defendant details potential evidence of prior bad acts on his part. Depending upon the defense(s) asserted by Brownlee, such evidence may be offered by the government at trial. The government will make pretrial notice of any 404(b) evidence at least two weeks prior to trial. Defendant has no prior criminal record in this case, therefore Rule 609 should not be implicated.

Finally, the government cannot ascertain what "prior surveillance/investigation" defendant is referring to in paragraph 7 of his Motion (Dkt. No. 41) without any further information. The government is not aware of any other or prior law enforcement investigation involving defendant Brownlee other than the investigation conducted from approximately November, 2010 through May 12, 2011 that resulted in the Indictment and Superceding Indictment in this case.

2. **Motion For Disclosure of Promises of Leniency And/Or Existence of Plea Bargain Agreements with Confidential Sources (Dkt. No. 42)**

Defendant Brownlee requests that the government produce to the defense any information it has regarding the identity of a confidential human source (CHS) identified as "River", as well as

any agreement or arrangement between the government and River relative to her contact with the Defendant and her potential as a witness against the defendant. (Dkt. No. 42)

In essence, defendant seeks early confirmation of the identity of the government's confidential informant who participated in the investigation. Additionally, defendant seeks early disclosure of impeachment evidence pertaining to said informant. The government objects to these requests as beyond the scope of discovery.

The government intends to call this particular confidential informant as a witness at trial. Like all witnesses the government intends to call at trial, the identity of this confidential informant and all impeachment evidence pertaining to the informant will be provided to the defendant with the Jencks Act materials one week prior to trial.[4]

This is not a capital case, and the United States is not required to disclose its witnesses in advance of trial. United States v. DiPasquale, 740 F.2d 1282, 1294 (3d Cir. 1984); United States v. Mitchell, 540 F.2d 1163, 1166 (3d Cir. 1976); United States v. Addonizio, 451 F.2d 49, 62 (3d Cir. 1971). It is well established that "the [criminal] discovery rules do not permit the

---

[4] It should be noted that extensive audio recordings, text messages and emails involving the informant and defendant were provided to defendant with the Rule 16.1 materials. In addition, the government has continuously made available to defendant all computer evidence and physical evidence seized in this case.

defense to get the names of witnesses." United States v. Mitchell, 540 F.2d 1163, 1166 (3d Cir. 1977).  Accord United States v. Casseus, 282 F.3d 253, 257 (3d Cir. 2002) (affirming district court's refusal to order pretrial discovery of the government's witness list; "a criminal defendant does not have the right to full discovery of the government's case"); United States v. Addonizio, 451 F.2d 49, 62 (3d Cir. 1972) ("in no event is the government required to divulge the identity of its witnesses in a noncapital case").  See also Government of the Virgin Islands v. Ventura, 476 F.2d 780, 781 n.1 (3d Cir. 1973).

Courts have long recognized that effective law enforcement and the protection of the public interest require that the government be permitted, absent exigent circumstances, to withhold the identity of informants.  See Roviaro v. United States, 353 U.S. 53 (1957).  The reason for this rule has been described as follows:

> A genuine privilege, on ... fundamental principal ..., must be recognized for the *identity of persons supplying the government with information concerning the commission of crimes*. Communications of this kind ought to receive encouragement.  They are discouraged if the informer's identity is disclosed.  Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity -- to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him.  The government also has an interest in non-disclosure of the identity of its informers.  Law enforcement

> officers often depend upon professional informers
> to furnish them with a flow of information about
> criminal activities.  Revelation of the dual role
> played by such persons ends their usefulness to the
> government and discourages others from entering
> into a like relationship.  That the government has
> this privilege is well established, and its
> soundness cannot be questioned.

McCray v. Illinois, 386 U.S. 300, 308-09 (1967) (citations omitted).

The government's privilege will give way only if the defense can make an adequate showing that disclosure is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause."  Roviaro, 353 U.S. at 60-61.[5]  The defendant bears the burden of setting forth a specific need for disclosure.  United States v. Jiles, 658 F.2d 194, 197 (3d Cir. 1981).  Accord Pickel v. United States, 746 F.2d 176, 181 (3d Cir. 1984) ("The individual seeking disclosure has the burden of establishing the significance of the informant's testimony.").

This burden is an exacting one.  Mere speculation that disclosure would be helpful is not sufficient to override the government's privilege.  Jiles, 658 F.2d at 197 ("[Defendant's]

---

[5]  In Roviaro, the Court discussed the circumstances under which an informant's identity should be disclosed to the defendant.  The underlying facts in Roviaro, however, involved the defendant's attempt to ascertain the identity of the government's informant where the government did not call the informant as a witness at trial.  Unlike the defendant in Rovario, Brownlee will be provided with confirmation of the informant's identity and impeachment evidence prior to trial, as the government intends to call the informant as a trial witness.

first reason, that as an eyewitness the informant may provide exculpatory information, is clearly not enough.... The mere speculation that an eyewitness may have some evidence helpful to the defendant's case is not sufficient to show the specific need required by <u>Roviaro</u>."); <u>United states v. Bazzano</u>, 712 F.2d 826, 839 (3d Cir. 1983) (en banc) (same).

Thus, a defendant must make a particularized showing that the informant can provide material evidence that aids the defendant in establishing a specific asserted defense. Absent such an affirmative showing, the courts have repeatedly refused to compel the government to disclose an informant's identity. <u>See, e.g.</u>, <u>Pickel</u>, 746 F.2d at 181 (defendants advanced "nothing more than speculation" and therefore "have not met their burden"); <u>Jiles</u>, 658 F.2d at 197 (same); <u>Bazzano</u>, 712 F.2d at 839 (same).

Defendant's motion wholly fails to articulate any particularized need for early disclosure of the informant's identity and should be denied at this time.

Finally, in paragraphs 10 and 11 of this Motion, defendant again makes a vague assertion that "The Defendant believes he had been approached by either a) a government agent or b) a confidential informant who had propositioned the Defendant in circumstances similar, if not identical, to the issue before the Honorable Court. The defendant, therefore, requests "any and all information regarding any and all other information regarding any and all other attempts by the government or its agents to involve

the defendant in any criminal matter whatsoever." (Dkt. No. 42, ¶¶ 10-11).   Without greater specificity, the government cannot ascertain who approached defendant, when, or under what circumstances.  Quite frankly, the audio recordings, email and text messages of defendant, already produced to defendant in this case, indicate that defendant was communicating with another, non-law enforcement individual in Washington, D.C. to  arrange for sexual contact with children. Similarly, in those recordings and emails already produced to defendant, defendant also states that he had been involved in a sexual relationship with a child named "Jackie" whose father, he had met online and who left the child with defendant Brownlee for a sexual encounter.  Brownlee also admitted to speaking with a mother or nanny online who he was hoping would allow him access to children.  Simply stated, by his own admission, Brownlee was communicating online with multiple, non-law enforcement individuals regarding sexual contact with children.

Law enforcement began communicating with Brownlee relative to the investigation in this case on or about November, 2010. The government is not aware of any other law enforcement investigation of Brownlee "in circumstances similar, if not identical, to the issue before the Honorable Court" other than the investigation in this case. Defendant's Motion should be denied.

3.    **Motion For Order Of Court Directing Psychological And/Or Psychiatric Evaluation Pursuant to Federal Statute 18 U.S.C § 4241 et seq.** (Dkt. No. 43)

Defendant requests a Court-ordered mental competency examination pursuant to 18 U.S.C § 4241 of defendant on the basis that "an evaluation of the Defendant by either a psychologist or psychiatrist is appropriate in that defendant has maintained that his conduct is of a fantasized nature." (Dkt. No. 43, paragraph 4). Defendant further states that a "medical competency evaluation of the Defendant will aid in the Defendant's defense and any possible sentencing and further incarceration after trial of the matter." (Dkt. No. 43, paragraph 6).

Section 4241 of Title 18 of the United States Code provides, in part:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, if there is ***reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense***.

18 U.S.C. § 4241(a) (emphasis added).  Factors to be considered in making a determination about competency include "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial. <u>Drope v.</u>

<u>Missouri</u>, 420 U.S. 162 (1975); <u>United States v. Henry</u>, 2008 WL 2787862 , *2 (E.D.Pa. July 17, 2008).

While couched in terms of a 18 U.S.C. § 4241 motion, defendant actually appears to be seeking a psychologist or psychiatrist evaluation to assist with his <u>defense</u> of fantasy in this case for purposes of trial and/or sentencing. Defendant proffers no reasons why he is incompetent to stand trial or otherwise proceed in this case.  Accordingly, a Court-ordered competency evaluation to determine the defendant's competency to stand trial neither appears to be what defendant seeks, nor is factually warranted in this case. Therefore, defendant's Motion pursuant to 18 U.S.C. § 4241 (Dkt. No. 43) should be denied.

### 4.  <u>Request for Specific Kyles and Brady Information (Dkt. No. 44)</u>

Defendant Brownlee requests an Order from the Court requiring the government "to disclose and provide specific information and materials that are known or with the exercise of due diligence should be known to the Government." (Dkt. No. 44) Defendant Brownlee's motion thereafter proceeds to list 21 paragraphs that contain the specific impeachment evidence and information sought.  The government responds to defendant's specific requests as follows:

Enumerated paragraphs 1 through 7, and 9 through 21 call for the production of <u>Brady</u> impeachment-type material of witnesses

the government intends to call at trial.  Such information, to the
extent that it exists, will be provided with the Jencks Act
material for each witness one week prior to trial.  <u>See</u> argument at
pp. 2-11 herein.

The government objects to the request in paragraph 8 on
the grounds that the request goes beyond the scope of discovery.
Defendant requests that the government disclose "the name and
whereabouts of any witness to the underlying events of this case
whom the government does not anticipate calling as a witness at
trial and a copy of any statement made by or a summary of an
interview with such witness."  <u>See</u> Dkt. No. 44 at paragraph 8.
The United States objects.

As explained above, Fed. R. Crim. P. 16(a)(2) provides:

> **Information not Subject to Disclosure.**  Except
> as Rule 16(a)(1) provides otherwise, this Rule
> does not authorize the discovery or inspection
> of reports, memoranda, or other internal
> government documents made by an attorney for
> the government or other government agent in
> connection with investigating or prosecuting
> the case....

In <u>Riley v. Taylor</u>, 237 F.3d 300 (3d Cir. 2001),[6] the
Third Circuit briefly summarized the rules established by <u>Brady v.
Maryland</u>, 373 U.S. 83 (1963) and its progeny, stating:

> In <u>Brady</u>, the Supreme Court held that 'the
> suppression by the prosecution of evidence

---

[6] This opinion was vacated on other grounds on rehearing <u>en
banc</u> at 237 F.3d 348, and then reinstated in part at 277 F.3d
261.

> favorable to an accused upon request violates
> due process where the evidence is material
> either to guilt or to punishment, irrespective
> of the good faith or bad faith of the
> prosecution.' <u>Id</u>. at 87, 83 S.Ct. 1194.  To
> state a valid <u>Brady</u> claim, a plaintiff must
> show that the evidence was (1) suppressed, (2)
> favorable, and (3) material to the defense.
> See <u>United States v. Perdomo</u>, 929 F.2d 967,
> 970 (3d Cir. 1991).  Evidence is material if
> there is reasonable probability that the
> outcome would have been different had the
> evidence been disclosed to the defense.  See
> <u>United States v. Bagley</u>, 473 U.S. 667, 678,
> 105 S.Ct. 3375.

<u>Riley</u> at 322.  It is therefore clear that the government cannot be required to disclose a statement of a witness whom the government does <u>not</u> intend to call unless that statement contains evidence that is (1) favorable to the defense (including impeachment materials regarding witnesses who <u>are</u> called by the government), and (2) material to the defense.

In <u>United States v. Agurs</u>, 427 U.S. 97 (1976), the Supreme Court stated that the prosecution is "under no duty to report *sua sponte* to the defendant all that they learn about the case and about their witnesses... [T]here is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case." <u>Agurs</u> at 104.  (citations omitted).

The government is aware of its responsibility to disclose exculpatory material that would be favorable and material to the defense.  The government is unaware of exculpatory <u>Brady</u>

material pertaining to defendant. The government also acknowledges that, to the extent that it is aware of evidence that would tend to impeach the testimony or credibility of witnesses whom it <u>does</u> intend to call at trial, such impeachment materials must be turned over so that the defense can effectively cross-examine the government witnesses. The government intends to disclose any and all such impeachment materials in conjunction with the early disclosure of the Jencks materials (discussed above).

Based on the foregoing, defendant's motion for pretrial production of statements of individuals not to be called as witnesses (paragraph 8) should be denied.

### III.   **Request for Disclosure of Evidence by Defendant**

The United States hereby requests disclosure by defendant of all evidence and information subject to disclosure pursuant to Fed. R. Crim. P. 16(b)(1).

Respectfully submitted,

DAVID J. HICKTON
United States Attorney

<u>s/Jessica Lieber Smolar</u>
Jessica Lieber Smolar
Assistant U.S. Attorney
U.S. Post Office & Courthouse
Suite 4000
Pittsburgh, PA  15219
(412)644-3500 (Phone)
Jessica.Smolar@usdoj.gov
PA ID No. 65406